UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBIN ODUM,

    Plaintiff,

-vs-                                                Case No. 8:08-cv-1282-T-24-EAJ

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on the motion for summary judgment filed by Defendant Government Employees Insurance Company ("Geico") (Doc. 14). Plaintiff opposes the motion. (Doc. 31.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.*

## BACKGROUND

Defendant's employment policy states that an employee's dishonesty is grounds for immediate termination. The policy also states that employees are given a certain number of "sick" days, which allow employees to be excused from work for illness, or doctor and dentist appointments. Defendant's policy indicates that violation of the attendance policy may also trigger disciplinary action, up to and including termination.

Plaintiff was employed by Defendant as an electrician. Defendant took "sick" leave on October 8th and 9th, 2007, claiming that he had laryngitis. He later claimed that it was strep throat. When later asked for a doctor's verification of this, Plaintiff stated he had no appointment or presecription on record, because the doctor had diagnosed him over the phone and told him it would be fixed by gargling with salt water.

Plaintiff again used sick leave on March 4th and 5th, 2008, claiming that he had a doctor's appointment on March 4th to prepare for a medical procedure scheduled on March 5th to correct some numbness in his leg. When later asked to verify his appointments, Plaintiff said that there was no appointment on March 4th, but that he went to the clinic that day to confirm his appointment for the 5th and to ask if he needed to do anything to prepare for it. Plaintiff said that on the morning of the 5th, he learned that the appointment for the 5th had been cancelled or had not been recorded in the system and that it therefore had to be rescheduled.

During Plaintiff's March 2008 absence, Plaintiff's co-workers told his manager, Andy Kerler ("Kerler"), that they believed Plaintiff was absent because he was dealing with the consequences of a DUI. Because Kerler had also heard from Defendant's Special Investigative Unit ("SIU") that in January of 2008 an informant reported that Plaintiff had a court appearance

2

scheduled for March 5, 2008 for a DUI arrest, Kerler asked Human Resources ("HR") to investigate whether Plaintiff had falsified his requests for sick leave on March 4th and 5th, 2008.

On March 13, 2009, an HR employee met with Plaintiff to question him about his October and March absences. Because Plaintiff gave contradictory answers and because of the reports from Plaintiff's co-workers and the SIU, Plaintiff was placed on administrative leave so that he could obtain notes from his doctor's office to verify his reported appointments. Defendant also asked Plaintiff for permission, which he gave, for Defendant to contact the doctor's office directly to verify the appointments. Plaintiff was unable to get a doctor's note verifying his reported appointments, but eventually got a note from the doctor's office stating that it was possible that human error led to the March 5th, 2008 appointment not being scheduled correctly. When an employee of Defendant called Plaintiff's doctor, he learned that Plaintiff had not had a scheduled doctor's appointment since September of 2006 and would not have another until March 18th, 2008.

Although he still maintained that he was attending to medical needs during his sick leave, Plaintiff eventually acknowledged that he had gotten charged with DUI on October 7th, 2007 (the day before he took two days of sick leave), and that he had a scheduled court hearing on March 5th, 2008. Plaintiff, insisted, however, that all of his absences were medically related and that he did not even attend the March hearing. He asserted that the March hearing was scheduled for an hour after his work shift ended, and thus would not have required him to take leave, even had he attended. Court records indicate that there was a hearing on Plaintiff's DUI charge on March 5th, 2008 and an employee in Defendant's SIU department claims to have personally seen Plaintiff at the hearing.

On March 17, 2008, Defendant told Plaintiff that, on the basis of Defendant's belief that

3

Plaintiff had been dishonest about his sick leave requests and had violated the attendance policy, the employment relationship between Plaintiff and Defendant would have to end; Plaintiff could choose to resign or he would be fired. Plaintiff resigned.

Plaintiff then brought the present lawsuit claiming that he was fired, not for falsifying sick leave requests, but for his reporting to the Fire Marshal violations of the fire code in his workplace. As the foundation of his allegation, Plaintiff cites his report he made to the Polk County Fire Marshal that the variable air volume units ("VAVs") in his workplace had faulty dampers.

VAVs are located in the air conditioning system and open or close, depending on the temperature, to allow more or less air through. Defendant's VAVs are located above the drop ceilings in Geico's Lakeland office. In order to determine whether VAVs are in need of repair, the drop ceiling tile must be removed and the VAVs must be put through operational tests.

Plaintiff claims that in 2007, Matthew O'Steen, another engineering associate, told Plaintiff that the VAVs were defective in that they could not prevent air flow in the event of a fire. O'Steen denies that any such conversation occurred. Plaintiff states that, on the basis of this conversation with O'Steen, Plaintiff informed his manager, Kerler, of the problem with the VAVs, calling it a fire hazard but that Kerler failed to take action. Plaintiff claims that in 2008, O'Steen told him that the problem had not been rectified. Plaintiff claims that on March 6th, 2008—the day after he returned from his disputed sick leave—he told Kerler that he had informed the Polk County Fire Marshal, Wes Hayes, of the fire code violation.

As the Polk County Fire Department did not have jurisdiction over Defendant's Lakeland office, Hayes placed an anonymous call alerting John McGrath at the Lakeland Fire Department of the reported code violation. McGrath mistakenly understood the complaint to be associated

4

with the fire dampers, rather than the VAVs and, after conducting some investigation, learned that there was no reason to think the fire dampers were defective and that there was no way to test them without destroying them. Thus, he concluded that the dampers posed no fire code violation. McGrath did not learn of any reported problem with the VAVs until he was subpoenaed in the present case. After learning of the reported problem with the VAVs, he again conducted some investigation, learned that Defendant's VAVs were not connected to the fire system and thus concluded that, even if they were defective, it would not violate the fire code.

There is no dispute that Plaintiff lacks any firsthand knowledge of the VAVs, their number in the office at issue, how they function, the consequences of their potential malfunction, or their working condition. The only people with detailed firsthand knowledge of the VAVs were Defendant's lead facilities engineer Earl Donaway and HVAC technician Jerry Weatherholtz. Neither of these parties believed there was any problem with the VAVs. The person in charge of determining fire code violations, McGrath, concluded that there was no violation, even if the VAVs were defective.

## DISCUSSION

The Florida Whistleblower's Act creates a right of action for a person who has incurred a retaliatory personnel action for objecting to or refusing to participate in any activity, policy, or practice that violates a law, rule, or regulation. Fla. Stat. § 448.102. To establish a prima facie case under the Act, Plaintiff must show that 1) he was engaged in a protected activity; 2) he suffered an adverse employment action; and 3) the adverse action was causally linked to the protected activity. *Sierminski v. Transouth Fin. Corp.*, 216 F. 3d 945, 950 (11th Cir. 2000). If Plaintiff establishes the prima facie case, the burden shifts to Defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If Defendant does so, then

5

Plaintiff must show by a preponderance of the evidence that Defendant's proffered reason for the adverse action is pretextual for a prohibited retaliatory reason. *Id.*

The Court begins by examining whether Plaintiff was engaged in a protected activity that would trigger the protection of the Florida Whistleblower's Act. In deciding whether an employee engaged in a protected activity, the plain language of the statute, as well as legal precedent, demonstrate that the activity protected by the Act must be an *actual* violation of a law, rule, or regulation; a *suspected* violation, even a good faith belief that there is a violation, is not sufficient to trigger the Act's protection. *White v. Purdue Pharma, Inc.*, 369 F. Supp. 1335, 1337–39 (M.D. Fla. 2005); *see also Colon v. Total Renal Care, Inc.*, 2007 U.S. Dist. LEXIS 85263 (Nov. 19, 2007) (holding that reasonable suspicion of a violation based on only circumstantial evidence is insufficient to establish the prima facie case under the Act).

Plaintiff's averment that O'Steen told him that the VAVs were not working and that the defect was a violation of the fire code is the only evidence submitted to support the first prong of his prima facie case. Plaintiff admittedly has no actual knowledge of the VAVs' malfunction or of the implication of such a defect on the fire code. However, the people directly familiar with the VAVs and of the fire code have testified that the VAVs were not connected, nor required to be connected, to the fire-safety system in anyway. The primary purpose of the VAVs was not related to fire safety, but was to regulate the air temperature in the office for the comfort of the employees. Thus, their malfunction would not be a violation of the fire code.

Plaintiff claims that Fire Marshal McGrath did not gather sufficient information to discover whether the VAVs were functioning properly or whether they affected the fire safety of Defendant's building before deciding that there was no violation of the code. This point is inapposite, however, because it is Plaintiff's burden to demonstrate the actual violation of law.

6

It is not Defendant's burden to disprove it. The Court, therefore, finds as a matter of law that there is no triable issue of fact as to whether Plaintiff was engaged in a protected activity: the reporting of an actual violation of a law, rule, or regulation.

However, even if Plaintiff had been engaged in a protected activity, the Court finds that Defendant's proffered reason for Plaintiff's termination—dishonesty about his abuse of the attendance policy—is a legitimate, non-retaliatory reason for his release from employment with Defendant. Both violations of the attendance policy and dishonesty are listed as grounds for dismissal in Defendant's employment policy. It matters not whether Plaintiff was actually telling the truth about his sick leave; Defendant merely had to *believe* that Plaintiff was dishonest. An honest but mistaken belief that an employee violated company policy does not render an employer liable for discriminatory conduct. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). The Court finds that there was clearly a foundation for such an honest belief. It is without dispute that Plaintiff failed to submit to Defendant any evidence that he had appointments on the days that he missed work to visit the doctor, and he was entirely inconsistent in explaining to Defendant his reasons for why the appointments did not occur.

Plaintiff offers several arguments for why he believes Defendant's reasons for his firing to be pretextual. First, Plaintiff claims that he had several unused vacation days that he could have taken, had he been engaged in activities not authorized for sick leave. However, evidence that an action was unwise or poorly weighed is not evidence that the action was not taken. Next, Plaintiff claims that a letter of commendation announcing his pay raise, which he received on March 14, 2008 (three days prior to his firing), demonstrates that his firing was pretextual. The Court, however, notes that the letter was dated and received after he reported the fire code

7

violation. It was not offered prior to the report and then revoked immediately thereafter. The Court also notes that Plaintiff's actions with regard to his DUI troubles had been under suspicion since at least January of 2008, when SIU became aware of his DUI—three months prior to his report to the Fire Marshal. Plaintiff also suggests that Kerler's statement that he could not think of a time outside of the controversial absences that Plaintiff had been dishonest demonstrates that firing Plaintiff for dishonesty was pretextual. The Court finds this argument similarly unpersuasive: just as an employer need not keep an employee who steals merely a few things, leaving some inventory behind, or an employee who harasses some of his co-workers but not others, an employer need not keep an employee who lies as to some things of importance, but not as to others.

In weighing the evidence and arguments in the record, the Court finds that no reasonable jury could find that Plaintiff was engaged in a protected activity or that Defendant's proffered reason for Plaintiff's termination was pretextual. The Court, therefore, concludes that Plaintiff has failed to create a triable issue of fact as to whether he was terminated in violation of the Florida Whistleblower's Act.

## **CONCLUSION**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and to close the case.

DONE AND ORDERED this 13th day of July, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record